(January 25, 2005)

■ In the Matter of ROSEMARIE PANIO, Appellant, v CAROLEE SUNDERLAND et al., Respondents, NICHOLAS SPANO, Appellant, and ANDREA STEWART-COUSINS, Respondent. (Proceeding No. 1.) In the Matter of ANDREA STEWART-COUSINS, Appellant, v CAR-

OLEE SUNDERLAND et al., Respondents, and NICHOLAS SPANO, Respondent. (Proceeding No. 2.) [790 NYS2d 136]—

In two related proceedings pursuant to Election Law article 16, inter alia, to determine the validity of certain absentee and affidavit ballots tendered in the general election held on November 2, 2004, for the public office of Member of the New York State Senate from the 35th Senatorial District, Rosemarie Panio, the Chairperson of the Westchester County Republican Committee, and Nicholas Spano, the Republican candidate for the office, separately appeal in proceeding No. 1 from so much of a final order of the Supreme Court, Westchester County (Warshawsky, J.), dated December 23, 2004, as directed the Westchester County Board of Elections to count 160 affidavit ballots tendered by voters who appeared at the correct polling place but the wrong election district, in effect, directed the Westchester County Board of Elections to count three affidavit ballots tendered in the wrong election district because of a map error, and, in effect, directed that seven affidavit ballots tendered in the wrong polling place due to map error "be cast and canvassed," and Andrea Stewart-Cousins, the Democratic candidate for the office, cross-appeals from so much of the same final order as directed the Westchester County Board of Elections not to count 45 absentee ballots tendered by poll workers and, in effect, directed the Westchester County Board of Elec-

tions not to count 450 affidavit ballots tendered by voters who appeared at the wrong polling place and the wrong election district, 20 affidavit ballots enclosed in envelopes that do not identify the election district in which they were tendered, and three affidavit ballots tendered by voters who were denied machine ballots because other voters allegedly signed the poll ledgers in their place.

Ordered that the final order is modified, on the law, by (1) deleting the provision thereof directing the Westchester County Board of Elections to count 160 affidavit ballots tendered by voters who appeared at the correct polling place but the wrong election district and substituting therefor a provision directing the Westchester County Board of Elections not to count those ballots, (2) deleting the provisions thereof, in effect, directing the Westchester County Board of Elections to count three affidavit ballots tendered in the wrong election district because of a map error, and, in effect, directing that seven affidavit ballots tendered in the wrong polling place due to map error be cast and canvassed, and substituting therefor provisions directing that those votes not be counted, and (3) deleting the provision thereof directing the Westchester County Board of Elections not to count 45 absentee ballots tendered by poll workers, and substituting therefor a provision directing the Westchester County Board of Elections to count those ballots; as so modified, the final order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

These election appeals involve the race for the office of Member of the New York State Senate from the 35th Senatorial District between the Republican candidate, Nicholas Spano, and the Democratic candidate, Andrea Stewart-Cousins. The general election took place on November 2, 2004, amid a flurry of complaints about voting irregularities. As a result, Rosemarie Panio, in her capacity as the Chairperson of the Westchester County Republican Committee, and the Democratic candidate, Andrea Stewart-Cousins, commenced separate proceedings pursuant to Election Law article 16 to determine, inter alia, the validity of certain absentee and affidavit ballots.

During the trial, the Supreme Court, Westchester County (Warshawsky, J.), ruled from the bench on hundreds of paper ballots and resolved the remaining issues in a final order dated December 23, 2004. By the end of the trial, Andrea Stewart-Cousins had received a total of 56,928 votes and Nicholas Spano had received a total of 56,986 votes, which gave him a narrow margin of victory of 58 votes. The question presented on the appeal and cross appeal is whether the Westchester County Board

of Elections (hereinafter the Board) should count (i.e., cast and canvass) the six categories of ballots that are still in dispute.

The Election Law provides that "[t]he State of New York shall be divided into election districts which shall be the basic political subdivision for purposes of registration and voting" (Election Law § 4-100 [1]). Whenever a voter appears at a polling place and offers to tender a ballot, and the address at which the voter claims to live is in the election district in which the voter seeks to vote, but the name or signature of the voter does not appear in the poll ledger or the computer-generated registration list, the voter must be permitted to vote if the voter presents a court order pursuant to Election Law § 8-302 (3) (e) (i) or an affidavit pursuant to Election Law § 8-302 (3) (e) (ii).

The procedure for voting by an affidavit ballot is set forth in Election Law § 8-302 (3) (e) (ii), which provides, in relevant part, that the voter "may swear to and subscribe an affidavit stating that he [or she] has duly registered to vote, the address in such election district from which he [or she] registered, that he [or she] remains a duly qualified voter in such election district, that his [or her] registration poll record appears to be lost or misplaced or that his [or her] name and/or his [or her] signature was omitted from the computer generated registration list." The statute further provides that "[t]he inspectors of election shall offer such an affidavit to each such voter whose residence address is in such election district" (Election Law § 8-302 [3] [e] [ii]).

In this case, the Supreme Court recognized that the election district is the "heart of our electoral system" and the "lynchpin [sic] of the Election Law." Based on that premise, the Supreme Court properly directed the Board not to count 450 affidavit ballots tendered by voters who appeared at the wrong polling place and, necessarily, in the wrong election district.

However, in counting 160 affidavit ballots tendered by voters who appeared at the correct polling place but the wrong election district, the Supreme Court improperly concluded that there are "meaningful distinctions" between those voters who went to the wrong polling place and those voters who went to the correct polling place but the wrong election district. Election Law § 8-302 (1) and (2) requires that a voter must present himself or herself before the election inspectors for his or her correct election district. If a voter tenders an affidavit ballot in an election district in which he or she is not entitled to vote, the ballot is prima facie invalid. The proponent of the affidavit ballot then has the burden of demonstrating that it was tendered to the inspectors of the wrong election district because a "ministerial

error by the board of elections or any of its employees caused such ballot envelope not to be valid on its face" (Election Law § 16-106 [1]; *see* Election Law § 9-209 [2] [a] [2]). As used in this context, "the phrase 'ministerial error' suggests a clerical or other inconsequential mistake comparable to the situation in *Matter of Carney v Niagara County Bd. of Elections* (8 AD3d 1085 [4th Dept 2004] [where the Board failed to date/time-stamp a military ballot envelope that was timely filed])" (*Matter of Gross v Albany County Bd. of Elections,* 3 NY3d 251, 259 n 3 [2004]).

Although there is evidence in this trial record that some poll workers did not follow the correct procedures, after carefully reviewing the 2,333-page trial transcript, we conclude that there is insufficient evidence to support a finding that these particular 160 voters tendered affidavit ballots in the wrong election districts because of ministerial errors on the part of the poll workers. Since these 160 voters did not fulfill the requirements of Election Law § 8-302 (3) (e) (ii), their affidavit ballots cannot be counted (*see Matter of Mondello v Nassau County Bd. of Elections,* 6 AD3d 18, 22 [2004]; *Matter of Marraccini v Balancia,* 182 AD2d 628, 630 [1992]; *Matter of Carola v Saratoga County Bd. of Elections,* 180 AD2d 962, 964 [1992]; *Matter of McClure v D'Apice,* 116 AD2d 721, 723 [1986]).

However, the Supreme Court should have permitted the Board to count 45 absentee ballots of poll workers. In 1982 the New York State Legislature enacted Election Law § 11-302, which allows poll workers to vote by special ballot; provided, however, that they deliver a "written statement" to the election inspectors in the election district in which they are registered that they will be "unable to appear at the polling place for such election district" because of their election-day duties (L 1982, ch 178). In contrast to Election Law §§ 7-122 and 8-400, which prescribe the form and content of absentee ballot applications and absentee ballots, Election Law § 11-302 does not prescribe the form of a "written statement" for the purpose of requesting a special ballot.

It is undisputed that the Board has never printed or provided a special ballot application or a special ballot for poll workers. Instead, the Board has historically instructed poll workers to apply for, and vote by, absentee ballots. Although it is alarming that the Board simply ignored Election Law § 11-302 for more than 20 years, it appears that each of the 45 poll workers in this case substantially complied with the statute by providing a written statement that is the functional equivalent of an application for a special ballot. Moreover, there was no objection that their

statements were insufficient or incomplete. Since these 45 poll workers complied with the requirements of Election Law § 11-302 as to content, and substantially complied as to form, their affidavit ballots should be counted (*see Matter of Ruiz v Sachs,* 43 NY2d 894, 895 [1978]; *Matter of Hicks v Egan,* 166 AD2d 735 [1990]; *Matter of Helfer v Amos,* 159 Misc 2d 65, 70 [1993]).

The Supreme Court erroneously directed the Board to count 10 affidavit ballots that were tendered in the wrong election districts because of so-called "map error." In reaching that conclusion, the Supreme Court relied on the ministerial error provision in Election Law § 16-106 (1). The trial transcript reveals, however, that the municipalities, not the Board or its employees, created the election district maps. Moreover, there is no evidence that the 10 voters in this category relied on the maps when they went to the wrong election districts. Thus, the proponents of these ballots failed to establish that the Board or its employees committed a ministerial error within the meaning of the statute or a causal connection between any such error and the ballots at issue (*see Matter of Lisa v Board of Elections of City of N.Y.,* 40 NY2d 911 [1976]).

The Supreme Court correctly determined not to count 20 affidavit ballots that were enclosed in envelopes that did not identify the election district for which they were tendered. The record reveals that some Board employees routinely wrote the missing information on the ballot envelopes when they removed them from the election district bags, while other employees placed yellow "Post-it Notes," or what the Supreme Court called "stickys," on the envelopes. It is disturbing, to say the least, that Board employees used yellow "Post-it Notes," which are easily dislodged, on ballot envelopes that are handled by many people, especially in a close election. Unfortunately, it is no longer possible to trace the origin of these ballots; therefore, they cannot be cast and canvassed.

The Supreme Court properly excluded three affidavit ballots tendered by voters who were denied the opportunity to tender their ballots by machine because other voters allegedly signed the poll ledgers in their place. Where, as here, there is a specter of fraud, the remedy is for the voter to seek a court order allowing him or her to vote (*see* Election Law § 8-302 [3] [e] [i]; § 16-108). Krausman, J.P., Mastro, Fisher and Lifson, JJ., concur.